# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
### Case No.: 23-cv-00504

| | |
|---|---|
| PHARMSAVER LLC,<br><br>                    *Plaintiff*,<br><br>v.<br><br>EZRIRX, LLC and EZRIEL GREEN,<br><br>                    *Defendants*. | **AMENDED COMPLAINT**<br><br>**DEMAND FOR A JURY TRIAL** |

Plaintiff PharmSaver LLC ("PharmSaver") for its Amended Complaint

against EZriRx, LLC ("EZriRx") and Ezriel Green alleges as follows:

## I.    INTRODUCTION

1.    This is an action for false advertising in violation of the Lanham Act,

15 U.S.C.  § 1125(a), and the Florida Deceptive and Unfair Trade Practices Act

("FDUTPA"), Fla. Stat. § 501.204, as well as for common law  unfair competition,

defamation, and tortious interference with business relations.  Briefly, Plaintiff

maintains a website (www.pharmsaver.net) which enables independent pharmacies

to obtain analytical information to obtain the most cost effective and efficient

orders from wholesalers.  The corporate Defendant (which is wholly controlled by

the individual defendant) is a competitor of Plaintiff's.  Since February 23, 2023,

Defendants have posted a Google sponsored ad maliciously and falsely attacking

the Plaintiff by stating that Plaintiff, "rips off" its customers.  The ad's statement is

a blatant falsehood because, in the first instance, Plaintiff's customers – the independent pharmacies that use its platform – do not pay for the service and thus could not be "rip[ped] off" – meaning, that they could not have been cheated out of any money that they do not pay to Plaintiff.  Instead, the service that Plaintiff provides to independent pharmacists is paid for by the wholesalers themselves.

2.   There is also nothing deceptive, dishonest or unfair about the services that Plaintiff provides to the independent pharmacists who join its network.  Quite the opposite is true.  The independent pharmacists greatly benefit by saving substantial money by ordering their drugs and other products through the Plaintiff's website. Thus, the unwarranted attack here by a competitor constitutes false advertising, defamation, unfair competition and tortious interference with business that has caused confusion among the pharmacists who utilize the Plaintiff's network.

3.   The false attack ad is gravely injurious to PharmSaver's reputation and if not removed immediately will continue to cause irreputable harm.  In particular, PharmSaver risks losing commissions from the wholesalers on sales from independent pharmacies who will view PharmSaver as fraudulent or unable to keep its network of independent pharmacists who might also believe the claims of "rip off."  Thus, the false advertising here by costing even non-paying customers presents a great danger to PharmSaver.

4.     Accordingly, in addition to compensatory, statutory damages and punitive damages, PharmSaver seeks a preliminary and permanent injunction requiring the immediate removal of the posting.

## II.     PARTIES, JURISDICTION AND VENUE

5.     PharmSaver LLC consists of three members, two of whom are natural persons domiciled in Florida and a third member which is a traditional trust, whose trustee is a natural person who is domiciled in New York.  Thus, for the purposes of diversity jurisdiction, PharmSaver is a citizen of Florida headquartered at 17801 Hunting Bow Circle, Unit 101, Lutz, Florida 33558.

6.     Defendant EZriRx, LLC, upon information and belief, consists of a single member whose domicile is in New Jersey and thus for the purposes of diversity, is a citizen of New Jersey, with a principal place of business at 1970 Swarthmore Avenue, Unit 4, Lakewood, New Jersey 08701.

7.     Defendant Ezriel Green is a natural person who, upon information and belief, is the sole member and manager of Defendant EZriRx and is domiciled at 427 Rose Court., Lakewood, New Jersey 08701-5873.

8.     The Court has subject matter jurisdiction over this dispute, pursuant to 26 U.S.C. §1331, because the claims against the Defendants arise under a federal statute-- to wit Section 43(a) of the Lanham Act.

9.      This Court also has subject matter jurisdiction because there is complete diversity of citizenship between the Plaintiff and the Defendants and the amount in controversy exceeds $75,000, exclusive of interest and attorney's fees.

10.      This Court has personal jurisdiction over the Defendants because they operate their business in Florida, inasmuch as they have pharmacists and other customers use their platform from Florida  and therefore  derive substantial revenue from their contacts with Florida and otherwise purposely availed themselves of the state of Florida by intentionally posting a defamatory and false ad on the internet which they knew would be accessible by Plaintiff's customers in Florida and thus caused damage to Plaintiff in Florida.  Indeed, among other things, through their false and defamatory advertising, Defendants caused Plaintiff to lose Florida customers (and associated commissions that would have been earned in Florida) and therefore misappropriated revenue with respect to such Florida customers that properly belongs to Plaintiff.

11.      Venue is appropriate in this district, pursuant to 28 U.S.C. §1391, because a substantial part of the events giving rise to the claim occurred here inasmuch as the damage occurred to Plaintiff in Florida and a substantial part of the property that is a subject of this action – PharmSaver's business – is found in this district.

III.   **FACTUAL ALLEGATIONS**

12.   PharmSaver is the leading platform for independent pharmacist to use an advance ordering system and online tools to maximize rebates.  Through the PharmSaver platform, independent pharmacists can access real time pricing, real time inventory and advance pharmacy analytics to maximize their savings in ordering from wholesalers who are part of the PharmSaver network.  Because PharmSaver created a dynamic marketplace which consists of a wide array of wholesale partners and created tools to easily find savings; pharmacies, hospitals, clinics and governmental agencies can buy prescription drugs through PharmSaver at a substantial discount and better manage their drug purchases.

13.   It bears emphasis, that there is no cost for pharmacists or other end users to join the platform and instead PharmSaver is funded by the wholesalers with whom it partners, who pay PharmSaver a commission for each transaction on its platform.

14.   At all relevant times, the conduct of EZriRx was controlled by the individual Defendant, Ezriel Green, who, upon information and belief, is its sole member and manager.

15.    Defendants are competitors of PharmSaver but actually offer an inferior, stripped-down service that comes nowhere near the quality or scope of PharmSaver's.

16.     The attack on PharmSaver's honesty comes with ill-grace, as Defendants have been sued for marketing, through their own private label, artificial tears that contained dangerous bacteria harmful to the consumer who used Defendants' product.

17.     Notwithstanding their own problems with consumer safety and truthful marketing as to their own products, Defendants launched a malicious attack on PharmSaver about a week ago which Defendants knew to be false.

18.     Starting on Thursday February 23, 2023, Defendants posted a Google ad which states as follows: "**switch to EZriRx & save moolah – PharmSaver rips you off**.  Over 5000 pharmacies are getting a better price on our platform.  Get a demo to see why.  Compare and shop from 30+ NABP accredited wholesalers AW.  Get a demo & join for free today!" (emphasis in the original)

19.     Anyone searching PharmSaver on Google would automatically be directed to this false attack ad.

20.     The ad is false because it implies that the pharmacists who use PharmSaver pay some sort of fee to PharmSaver, but that is not the case. More generally, the term "rip off," is defined in Merriam-Webster dictionary, and commonly understood to mean "an act or instance of stealing": "theft" and "a financial exploitation."  The Cambridge University Dictionary defines "rip someone off" as "to cheat someone by charging too much money or to steal

something." Thus, the ad not only necessarily but falsely represents that PharmSaver is actually itself charging its users or that the prices on PharmSaver's platform are more expensive than Defendants', but that PharmSaver is deliberately engaged in a dishonest trade practice to cheat its platform users.

21.     Even to the extent that the ad is merely attempting to convey that PharmSaver is "rip[ping] off pharmacists by introducing them to inferior prices as compared to EZriRx, that statement is also false.  Where there are wholesalers in common on the two platform, the prices are as good if not better on PharmSaver's.

22.     EZriRx' s ad takes liberties with the truth even on smaller points.  As its own website and youtube video make clear, EziRx neither has 5,000 pharmacies nor does it have 30+ NABP accredited wholesalers.

23.     The statements in this attack ad are not mere puffery or opinion but are statements of fact – knowingly untrue facts that defame PharmSaver.

24.     PharmSaver has customers throughout the United States but particularly in Florida where it is headquartered and by attacking PharmSaver in Florida, Defendants availed themselves of the Florida forum to cause PharmSaver damage here.

25.     PharmSaver is suffering immediate and irreputable harm to its good will and reputation because of this false and malicious act.  In particular, if PharmSaver loses independent pharmacies as members of its platform, it risks

losing commissions from the wholesalers on sales generated on the platform from those pharmacies.  Thus, the false advertising here by costing even non-paying customers presents a grave danger to PharmSaver.

## IV.   CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF LANHAM ACT
#### (Against Both Defendants)

26.   Plaintiff repeats and realleges paragraphs 1 through 25 of its Complaint as if fully set forth herein.

27.   Plaintiff and Defendants compete for the same pool of platform users and Defendants' false attack on Plaintiff was commercial in nature.

28.   The Google sponsored advertisement by the Defendants against Plaintiff (a) was intentionally and materially false and misleading; (b) the ad deceived, or had the capacity to deceive, consumers, (c) the deception has had or will have a material impact on the decisions by end users to join Plaintiff's platform, (d) the service provided Plaintiff PharmSaver that has been misrepresented by Defendants affects interstate commerce and (e )Plaintiff has been or is likely to be injured as a result of the false advertising.

29.   Accordingly, Plaintiff has been damaged in an amount to be determined at trial but which exceeds $75,000 exclusive of attorney's fees and

interest, and is also entitled to statutory damages, punitive damages, attorney's fees and pre and post judgment interest.

30.    Monetary damages alone cannot make Plaintiff whole and thus it does not have an adequate remedy at law, as it has lost and will continue to lose goodwill because of the false advertisement. Thus, Plaintiff also requires an injunction removing the false advertisement and enjoining similar behavior, a constructive trust over sales that Defendants obtained at Plaintiff's expense because of the false advertising and disgorgement of such improperly obtained revenue.

## COUNT II
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Against Both Defendants)

31.    Plaintiff repeats and realleges paragraphs 1 through 25 of its Complaint as if fully set forth herein.

32.    The Defendants violated the FDUPTA by engaging in (a) a deceptive and unfair practice (b) which misled or likely misled consumers and (c) thus caused actual damages to Plaintiff.

33.    The practice here was unfair and deceptive because it likely confused consumers and among other things it offended established public policy and was

immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

34.     Accordingly, Plaintiff is entitled to compensatory damages in the amount to be determined at trial but which exceeds $75,000 not including attorney's fees and interest, and to statutory damages and an award of attorney's fees plus pre and post judgment interest under the FDUPTA.

35.     Monetary damages alone cannot make Plaintiff whole and thus it does not have an adequate remedy at law, as it has lost and will continue to lose goodwill because of the false advertisement. Thus, Plaintiff also requires an injunction removing the false advertisement and enjoining similar behavior, a constructive trust over sales that Defendants obtained at Plaintiff's expense because of the false advertising and disgorgement of such improperly obtained revenue.

## COUNT III
## MISLEADING ADVERTISING
### (Against Both Defendants)

36.     Plaintiff repeats and realleges paragraphs 1 through 25 of its Complaint as if fully set forth herein.

37.     Defendants engaged in the misleading advertising under Florida law because it is certain that PharmSaver customers relied on the misleading Google ad to the detriment of themselves and PharmSaver.  In this regard, Defendants (a)

made a misrepresentation of material fact to PharmSaver customers and wholesaler in the Google sponsored ad starting on February 23, 2023 and continuing to the present; (b) know or should have known of the falsity of their statements in the ad; (c) intended that the representations would induce consumers and wholesalers to rely and act on them; and (d) Plaintiff has suffered injury by the consumers' and wholesaler's justifiable reliance on the misrepresentations.

38.     The Defendants' misrepresentation through the false Google attack ad was made with the intent and purpose, both directly and indirectly, of selling its own services to induce the public to enter into an obligation relating to such services.

39.     The misleading advertising here was particularly egregious because the Defendants are competitors of Plaintiff's and thus under Florida law this competition is a permitted substitute of the element of direct reliance by a consumer on the false advertising.

40.     As a result of the misleading advertising, Plaintiff has suffered compensatory damages in an amount to be determined at trial but which exceeds $75,000 not including attorney's fees and interest, and is also entitled to an award of statutory damages, attorney's fees, and pre and post judgment interest as provided by Florida statutory law for misleading advertising.

41.     Monetary damages alone cannot make Plaintiff whole and thus it does not have an adequate remedy at law, as it has lost and will continue to lose goodwill because of the false advertisement. Thus, Plaintiff also requires an injunction removing the false advertisement and enjoining similar behavior, a constructive trust over sales that Defendants obtained at Plaintiff's expense because of the false advertising and disgorgement of such improperly obtained revenue.

**COUNT IV**
**COMMON LAW UNFAIR COMPETITION**

**(Against Both Defendants)**

42.     Plaintiff repeats and realleges paragraphs 1 through 25 of its Complaint as if fully set forth herein.

43.     Defendants engaged in (a) deceptive and fraudulent conduct with respect to their competitor, the Plaintiff, and (b) there is a high likelihood of consumer and wholesaler confusion because of the misleading attack ad that they launched against Plaintiff.

44.     Plaintiff and Defendants compete within a common pool of customers.

45.     Accordingly, Defendants are liable for unfair competition under Florida law, and for compensatory damages in the amount to be determined at trial,

but which exceeds $75,000 exclusive of interest and attorney's fees plus pre and post judgment interest and punitive damages.

46.     Monetary damages alone cannot make Plaintiff whole and thus it does not have an adequate remedy at law, as it has lost and will continue to lose goodwill because of the false advertisement. Thus, Plaintiff also requires an injunction removing the false advertisement and enjoining similar behavior, a constructive trust over sales that Defendants obtained at Plaintiff's expense because of the false advertising and disgorgement of such improperly obtained revenue.

## COUNT V
## DEFAMATION
### (Against Both Defendants)

47.     Plaintiff repeats and realleges paragraphs 1 through 25 of its Complaint as if fully set forth herein.

48.     Through the false Google ad, Defendants published misrepresentations against Plaintiff knowing of their falsity concerning a private entity --the Plaintiff --which resulted in actual damages to the Plaintiff because the false statements were defamatory.

49.     The statements in the malicious Google attack ad are defamatory *per se* because they falsely suggest that Plaintiff has engaged in dishonest or illegal acts in connection with the commercial service that it offers.

50.    Because the statements here were so obviously defamatory and damaging to Plaintiff's reputation, they give rise to an absolute presumption of both malice and damages.

51.    As a result of this defamation, Defendants are jointly and severally liable to Plaintiff for an amount of compensatory damages to be determined at trial but which exceeds $75,000 not including attorney's fees and interest, plus punitive damages.

52.    Monetary damages alone cannot make Plaintiff whole and thus it does not have an adequate remedy at law, as it has lost and will continue to lose goodwill because of the false advertisement. Thus, Plaintiff also requires an injunction removing the false advertisement and enjoining similar behavior, a constructive trust over sales that Defendants obtained at Plaintiff's expense because of the false advertising and disgorgement of such improperly obtained revenue.

## COUNTS V
## TORTIOUS INTERFERENCE
### (Against Both Defendants)

53.    Plaintiff repeats and realleges paragraphs 1 through 25 of its Complaint as if fully set forth herein.

54.    Plaintiff has a business relationship with independent pharmacists who accessed its website and with wholesalers who pay Plaintiff a commission for

each purchase made by consumers on Plaintiff's platform; Defendants were aware of this relationship with the pharmacists and wholesalers but intentionally and unjustifiably interfered with that relationship through their maliciously false attack ad which resulted in damages to Plaintiff.

55.    By disrupting Plaintiff's relationship with the pharmacists who use its network, Defendants also intend to disrupt its relationship with the wholesalers who fund the platform by paying Plaintiff for commissions for transaction made on the platform.

56.    As a result of this tortious interference with the Plaintiff's business relationships, the Defendants are jointly and severally liable to Plaintiff in an amount to be determined at trial, but which exceeds $75,000, not including interest and attorney's fees, plus pre and post judgment interest and punitive damages.

57.    Monetary damages alone cannot make Plaintiff whole and thus it does not have an adequate remedy at law, as it has lost and will continue to lose goodwill because of the tortious interference caused by the false advertisement. Thus, Plaintiff also requires an injunction removing the false advertisement and enjoining similar behavior, a constructive trust over sales that Defendants obtained at Plaintiff's expense because of the false advertising and disgorgement of such improperly obtained revenue.

V.      **<u>RELIEF REQUESTED</u>**

**WHEREFORE**, the Plaintiff respectfully requests a judgment in its favor and against Defendants holding Defendants jointly and separately liable for false advertising under the Lanham Act and the FDUTPA, for misleading advertising under Florida law, for common law unfair competition, defamation and tortious interference and awarding Plaintiff compensatory damages, statutory damages, enhanced and punitive damages, attorney's fees and costs and pre and post judgment interest plus a preliminary and permanent injunction, constructive trust and disgorgement because the unlawful conduct here imminently and irreparably damages Plaintiff which does not have an adequate remedy at law.

VI.     **<u>DEMAND FOR JURY TRIAL</u>**

58.     Plaintiff hereby demands a jury trial on any and all issues so triable.

Dated:        Miami, Florida
              March 9, 2023

                                        Respectfully submitted,


                                        By: *<u>/S/ Andrew K. Levi</u>*
                                        Andrew K. Levi, Esq.
                                        Florida Bar No.: 48774
                                        **LEHR LEVI & MENDEZ P.A.**
                                        1401 Brickell Avenue, Suite 910
                                        Miami, FL 33131
                                        Telephone: 305-377-1777
                                        Fax: 305-377-0087
                                        E-mail: alevi@llmlawfirm.com

-and-

Jeffrey M. Eilender, Esq. (*pro hac vice* admission motion to be submitted)
Samuel L. Butt, Esq. (*pro hac vice* admission motion to be submitted)
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, NY 10004
Telephone: 212-344-5400
Fax: 212-344-7677
E-mail: jeilender@schlamstone.com
E-mail: sbutt@schlamstone.com

*Attorneys for Plaintiff PharmSaver LLC*